[Cite as *State v. Weatherly*, 2019-Ohio-4372.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee             :        Appellate Case No. 2018-CA-123
                                       :
v.                                     :        Trial Court Case No. 2018-CR-488
                                       :
MASON WEATHERLY                        :        (Criminal Appeal from
                                       :        Common Pleas Court)
    Defendant-Appellant            :
                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of October, 2019.

. . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

AMY E. FERGUSON, Atty. Reg. No. 0088397, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Mason Weatherly appeals his convictions for the following offenses: Count I, improper handling of a firearm in a motor vehicle, in violation of R.C. 2923.16(B), a felony of the fourth degree; Count II, aggravated robbery, in violation of 2911.01(A)(1), a felony of the first degree; and Count III, failure to comply with the order or signal of a police officer, in violation of R.C. 2921.331(B) and (C)(5), a felony of the third degree. Count II was accompanied by a firearm specification, of which he was also found guilty. Weatherly filed a timely notice of appeal on December 5, 2018.

{¶ 2} The incident which formed the basis for the convictions occurred at approximately 10:30 p.m. on July 17, 2018, when Craig Portman was approached from behind by two men as he walked to his residence in Springfield, Ohio. Portman testified that one of the men pressed a gun to the back off his head, ordered him to lie down on the ground, and stated, "You know what this is." Portman testified that he lay down on the ground, and the man went through his pockets, taking Portman's cellphone and some cash. The two men then got into a white Mitsubishi Eclipse and drove away. Portman testified that he never saw the two men who robbed him.

{¶ 3} Portman's neighbor, Nathaniel Byrd, testified that he was sitting in his driveway when the robbery occurred, and he witnessed the entire event. Byrd testified that after the robbery ended and the two men drove away, he was able to flag down a nearby police officer and explain what he had just witnessed. Byrd informed the officers that he observed two men exit a white Mitsubishi Eclipse and rob Portman at gunpoint. Byrd further stated that one of the men was wearing a red shirt and white shoes, and the other man was wearing a "light gray" or "off-white" hooded sweatshirt. Byrd testified that he told the police that once the robbery had been completed, the two men got back in the

white Eclipse and drove about five feet before the car stopped. Byrd testified that the individual wearing the hoodie exited the vehicle, picked something up from the ground, got back inside the vehicle, and then the vehicle drove away. Byrd did not identify which of the two individuals was driving the vehicle.

{¶ 4} Based upon the information provided by Byrd, Springfield Police Officers Greg Ivory and Thomas Potter were dispatched to the area to investigate. The officers were driving separately in marked police cruisers. The officers were informed that the perpetrators were traveling in a white Mitsubishi Eclipse and were likely armed with a handgun. Shortly thereafter, Officer Potter observed a white Eclipse traveling near where the robbery had just occurred. Officer Potter activated his cruiser's lights and initiated a traffic stop of the vehicle. The driver of the vehicle pulled over and stopped. Immediately after the stop had been effectuated, Officer Ivory arrived at the scene to assist Officer Potter. However, just as Officer Ivory arrived, the driver of the Eclipse drove away from the scene at a high rate of speed.

{¶ 5} Officers Potter and Ivory gave chase and pursued the vehicle as it traveled southbound on Yellow Springs Street towards Leffel Lane. Officer Ivory testified that during the chase, they reached speeds of 74 to 84 miles per hour in a residential area with a speed limit of 45 miles per hour. Eventually, the chase led onto the campus of Clark State University where the Eclipse struck a curb, bounced through a grassy area, and rolled onto a service driveway where it came to rest.

{¶ 6} At that point, three men exited the vehicle and began running northbound towards Rhodes Hall, Clark State's business building. Officer Ivory testified that he exited his cruiser and chased one of the men, later identified as Weatherly. After

apprehending Weatherly, Officer Ivory searched him and ordered him to the ground at gunpoint. Officer Potter apprehended the other two individuals, who were both juveniles. The officers searched all of the individuals but did not find a handgun. After securing the individuals, the officers searched the immediate area and located a loaded handgun in the bushes nearby. The officers also located Weatherly's shoes on the sidewalk near the wrecked Eclipse. Officer Potter testified that he also found a cellphone belonging to Portman on the ground to the rear of the Eclipse near Weatherly's shoes. Weatherly was arrested and taken into custody. Significantly, both officers testified that at no time did either one of them observe who was driving the vehicle, nor was any evidence adduced that established the location of any of the occupants while seated in the two-door vehicle before they exited and ran from the police after wrecking the car on the campus of Clark State.

{¶ 7} On June 23, 2018, Weatherly was indicted for improper handling of firearms in a vehicle (Count I), aggravated robbery (deadly weapon), with a firearm specification (Count II), and failure to comply with the order or signal of a police officer (Count III). At his arraignment on July 27, 2018, Weatherly pled not guilty to the charged offenses, and the trial court set bond at $50,000.

{¶ 8} The matter was tried by a jury on November 14, 2018. The State presented the testimony of five witnesses, including Portman, Byrd, and Officers Ivory and Potter. At the close of the State's case, Weatherly's attorney made an oral motion for acquittal pursuant to Crim.R. 29. The trial court overruled the Crim.R. 29 motion, and the defense rested without presenting any witnesses.

{¶ 9} The jury found Weatherly guilty on all counts in the indictment. The trial

court ordered the adult probation department to prepare a presentence investigation report (PSI). At disposition on November 21, 2018, the trial court sentenced Weatherly as follows: one year in prison for Count I, improper handling of a firearm in a motor vehicle; ten years in prison for Count II, aggravated robbery plus an additional three years for the firearm specification; and two years in prison for Count III, failure to comply with the order or signal of a police officer. The trial court then ordered that the sentences for each count be served consecutively, for an aggregate term of 16 years.

{¶ 10} It is from this judgment that Weatherly now appeals.

{¶ 11} Weatherly sole assignment of error is as follows:

THE JURY VERDICT WAS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} As previously stated, Weatherly was found guilty of failing to comply with the order of a police officer in violation of R.C. 2921.331(B), which provides, "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."

{¶ 13} In his sole assignment, Weatherly contends that the jury's verdict finding him guilty of Count III, failure to comply with the order or signal of a police officer, was against the manifest weight of the evidence, because the State failed to adduce any evidence that he was driving the Eclipse during the attempt to elude the police after the robbery of Portman.

{¶ 14} This court has stated that "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested

by the evidence is more believable or persuasive." (Citations omitted). *State v. Jones*, 2d Dist. Montgomery No. 25724, 2014-Ohio-2309, ¶ 8. "When evaluating whether a [judgment] is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *Thompkins* at 387.

{¶ 15} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). However, we extend less deference in weighing competing inferences suggested by the evidence. *Id.* The fact that the evidence is subject to differing interpretations does not render the judgment against the manifest weight of the evidence. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 16} As previously stated, Officers Ivory and Portman each testified that at no time did they observe who was driving the vehicle. Additionally, no evidence was adduced that established the location of any of the occupants while seated in the vehicle before they exited and ran from the police after wrecking the car on the campus of Clark State University. Significantly, neither officer knew that there were three individuals in the vehicle, and not just two, until the trio exited the vehicle at Clark State and ran away.

Portman, the robbery victim, testified that he never saw Weatherly or any of the individuals involved in the robbery because he had his back to them. Byrd testified that he saw two people get out of the Eclipse and rob Portman; however, other than giving a description of the individuals' clothing, Byrd did not provide any testimony regarding the identity of the individual driving the car. Finally, contrary to the State's assertions, the photographs taken at the scene where Weatherly was arrested failed to establish who was driving the vehicle or from which door of the vehicle the three individuals exited. Notably, the photographs also do not depict just the passenger side's seat pushed forward, suggesting only the driver exited from the driver's side of the vehicle.

{¶ 17} We also note that the trial court instructed the jury that the theory of accomplice liability would apply only to Count II, aggravated robbery. The trial court specifically instructed the jury that accomplice liability *did not* apply to Count III, failure to comply. Moreover, the record establishes that the State's entire theory of its case as it related to the offense of failure to comply was based upon the assertion that Weatherly was driving the Eclipse when the individuals attempted to elude the police.[1]

{¶ 18} On the record before us, we conclude that Weatherly's conviction for failure to comply with the order or signal of a police officer is against the manifest weight of the evidence. The facts herein create the exceptional case where the evidence presented weighs heavily in favor of acquittal and where the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Therefore, we reverse Weatherly's conviction for failure to comply with the order or signal of a police

---

[1] Absent a complicity instruction, the jury cannot have convicted Weatherly as a complicitor charged as a principal.

officer.

**{¶ 19}** Weatherly's sole assignment of error is sustained.

**{¶ 20}** Weatherly sole assignment of error having been sustained, his conviction for failure to comply with the order or signal of a police officer is vacated, and this matter is remanded for the trial court to file a corrected judgment entry.   In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


HALL, J. and TUCKER, J., concur.



Copies sent to:

John M. Lintz
Amy E. Ferguson
Hon. Douglas M. Rastatter